SABINE (AETNA INS. CO. v.). See Case No. 97.

SABINE, The (NOTT v.). See Case No. 10,366.

---

## Case No. 12,198.

### The SABIONCELLO.

[7 Ben. 357.] [1]

District Court, S. D. New York. June. 1874.

BILL OF LADING—DAMAGE TO CARGO—SEA PERILS —NEGLIGENT STOWAGE.

1. A ship, bound from Leith to New York, took on board coal, coal oil, railroad iron, and bales

1 [Reported by Robert D. Benedict. Esq.. and B. Lincoln Benedict, Esq., and here reprinted by permission.]

of paper stock. She gave for the paper stock a bill of lading, acknowledging the receipt of the bales in good condition. and excepting perils of the sea. She met with heavy weather on the voyage, and pumped oil, and, on the discharge of her cargo, some of the casks of oil were found to be empty, from leaks caused by the pressure on and breakage of the casks. The paper stock was found to be stained with oil and coal dust; and the consignees filed a libel against the ship to recover the damage: *Held*, that, the damage being shown to have occurred on board the vessel, from oil and coal forming part of the cargo, the burden lay on the ship to show that it arose from a peril excepted in the bill of lading.

[Cited in The Pharos. 9 Fed. 914; The Giglio v. The Britannia, 31 Fed. 432.]

2. Although the shippers of the paper stock knew that oil was to be taken by the vessel, they did not assume all risk of damage to it from the oil.

3. In view of the peculiar character of the coal oil, and the liability of injury to the paper stock, if the casks should leak, the ship was bound to use especial care in stowing the paper stock and the oil, with reference to each other;

[Cited in Mainwaring v. The Carrie Delap, 1 Fed. 879; The T. A. Goddard, 12 Fed. 177; The Maggie M., 30 Fed. 693; Hills v. Mackill, 36 Fed. 704; The Glamorganshire, 50 Fed. 840.]

4. Such care was not taken, and there was, therefore, negligence, for which the vessel was liable.

In admiralty.

John E. Parsons, for libellants.

Welcome R. Beebe, for claimants.

BLATCHFORD, District Judge. This is a suit for damage to bales of paper stock, consisting of shavings of paper, old books and pamphlets, and newspapers, brought by the ship Sabioncello, from Leith, Scotland, to New York, under a bill of lading acknowledging the receipt of the goods in good order and condition, and excepting the perils of the sea and the dangers of navigation. The bales were covered with bagging. The cargo consisted of 1,324 barrels of coal oil, 110 tons of coal, 150 tons of old railroad iron, and these bales of paper stock, 158 in number, covered by the said bill of lading. The libel alleges damage to the bales of paper stock, arising from their having been improperly stowed among. or under, or near the barrels of oil, and that. through want of proper care, the vessel permitted the paper stock to become stained by oil and coal dust, whereby it was damaged.

It is shown, that a large number of the bales of paper stock, when they came out of the vessel, at New York. were stained and saturated, in spots extending some distance inward, with the oil, which, in some instances, was wet and fresh. and that some of the bales were stained with coal dust. The evidence is satisfactory to show that the oil stains were made on board of the vessel. The bill of lading acknowledges the external good order of the bales, and there is no reliable evidence to show that any of the stains of oil or of coal dust were made before the bales of paper stock were put on

board of the vessel. The question, therefore, arises, whether the damage happened by the perils excepted in the bill of lading. The damage to the goods being shown to have occurred on board of the vessel, from oil and coal forming part of the cargo, the burden lies on the vessel to show that the damage arose from the peril excepted in the bill of lading. Clark v. Barnwell, 12 How. [53 U. S.] 272, 280. Accordingly, the answer sets up, that the vessel, on her voyage, encountered gales of wind and heavy seas, and was much strained, and her seams were opened, and she took in water; and that, owing to these causes, her cargo shifted, and her bulkheads were thrown down, and that the stains of oil on the bales of paper stock arose from the exceptions contained in the bill of lading, exempting the vessel from liability growing out of the dangers of the seas and the accidents of navigation. It is shown that the vessel, during the voyage, encountered three gales, and was on her beam ends more than once, and leaked some about her upper works during the gales; that, when the weather was rough, they pumped a great deal of oil; that, when the cargo came to be discharged, three of the oil casks were found to be entirely empty, and the most part of another one was out, and a good many were partly empty, and, after those which were partly empty were filled up, there were seventeen empty oil casks left; and that this escape of oil resulted from pressure on and breakage of the casks. But, even assuming that the evidence shows that the winds and the waves caused the oil casks to break, and the oil to escape, so that it reached and stained the bales of paper stock, it is competent for the libellants to show that such damage might have been avoided by the exercise of reasonable skill and attention on the part of the vessel. The libellants, in undertaking to show that, must establish negligence affirmatively. In considering that question, however, regard must be had to the character of the cargo. The vessel being up as a general ship, the libellants may not be at liberty to say that it was negligence to carry oil in the same vessel with paper stock; but yet the proposition set forth in the answer, that, as the shippers of the paper stock knew that oil was to be taken by the vessel, such shippers assumed all risk of damage to the paper stock from the oil, is not a sound one. The true rule is, that the peculiar character of the coal oil, its pungent odor, its volatile character, the damage certain to result to other cargo from contact with it, the liability of the casks containing it to break by pressure, from the working of the vessel, and let out the oil, demanded especial care in stowing the paper stock and the oil, with reference to each other. On the evidence, I find that such proper care was not exercised. The certificate of the surveyors at Leith, introduced in evidence by the claimants, certifying as to the manner in which the cargo was stowed at Leith, sets forth that the casks of oil were stowed in both ends of the ship. The ship had but one deck, but had cross beams in the hold, on which a second deck could be laid. The certificate states, that, in the forward end of the ship, the oil was stowed up to the cross beams, and that, above such oil, to the deck, bales of paper stock were stowed; that, in the after end of the ship, the oil was stowed up to the deck, with a platform on the cross beams, to prevent undue pressure; that part of the coal was stowed in the bottom amidships, with iron on top, and bales of paper stock on top of the iron, to the cross beams, and two tiers of iron above the cross beams, and these covered with boards and mats, and filled up with coal in the main hatchway. It is very clear from this, that, while some of the bales of paper stock were above the cross beams forward, others were under the cross beams amidships; and that there was oil under the cross beams, fore and aft, and oil above the cross beams aft. It is denied by the officers and crew of the vessel, in the face of this certificate, and in contradiction of evidence on the part of the libellants as to the stowage, as seen on the arrival of the vessel at New York, that there was any paper stock stowed below the cross beams. Wherever the paper stock and the oil were stowed, the former was stowed in too close proximity to the latter; and, even though the winds and the waves caused the oil casks to be broken, and the oil to be set free, so that it reached the bales of paper stock, yet the probability that such perils would occur required, in view of the nature of the oil and of the paper stock, that more care should have been used in stowing the paper stock, in reference to the oil, than was bestowed. Muddle v. Stride, 9 Car. & P. 380. There was, therefore, negligence, for which the vessel is liable. Let a decree be entered for the libellants, with a reference.

[For a hearing on exceptions to the commissioner's report, see Case No. 12,199.]