## THE PHAROS.

*(District Court, S. D. New York. January 3, 1882.)*

1. BURDEN OF PROOF.
   Where goods are received on board ship in good condition and found to be damaged when delivered, the burden of proof is upon the carrier to show that the damage arose from some peril excepted by the bill of lading.

2. STOWAGE.
   Different parts of the cargo must be so stowed as not unnecessarily to injure one another:

3. BILLS OF LADING.
   The libellants shipped 432 bales of wool on the ship P., at San Francisco, to be delivered in New York, on the usual bills of lading. On delivery, 24 bales were found injured by sea-water, and 76 other bales were found damaged from some other cause, being rotted and caked on the bottom or sides of the bales, or in strips across them. Wet redwood formed a part of the cargo, upon which, as a temporary floor, the wool was placed, with dunnage strips between, separated by open spaces. It was proved that such rotting might arise from contact of the bales with wet wood, or from very close proximity to it, when steaming from the wet; also, that the ship met several severe storms upon the voyage, and took in water which penetrated between-decks, and that there was much sweating of the cargo. *Held*, that an adequate cause of the damage by sea-water being shown, the injury to the 44 bales from that cause was within the excepted perils, and that the vessel is not liable for that part of the loss; but that the damage to the 76 bales arose from contact with, or too close proximity to, the wet redwood taken on board as a part of the cargo, against which the carriers were bound to protect the wool by proper stowage, and that the vessel is liable for such damage.

In Admiralty.

*William A. Walker* and *F. B. Jennings,* for libellants.

*Owen & Gray,* for claimants.

BROWN, D. J. This is an action *in rem* to recover damages for injury to 120 bales of wool, by sea-water and contact with wet redwood, in the ship Pharos, on her voyage from San Francisco to New York, in 1879. The wool in question was part of 432 bales shipped on account of the libellants, in good condition, under the ordinary bills of lading, to be delivered to the libellants in like good order and condition, perils by the sea excepted. The Pharos sailed from San Francisco on the fifteenth day of May, 1879, and arrived in New York on August 29th of that year. She carried a mixed cargo, including about 1,900 bales of wool, and 140,000 feet of redwood, in planks or timbers of various dimensions. The redwood was mostly laid as a floor upon the beams of the lower deck. Over this, dunnage, consisting of strips of board about one inch thick and a few inches apart, was laid, and upon this a large quantity of the wool was

stowed. Along the wings of the upper and lower between-decks piles of redwood were also stowed, some three feet in height, on top of which bales of wool were laid, separated by dunnage, and bales were also stowed between the wings, separated from the redwood by similar upright strips of dunnage.

The Pharos was a new vessel, first class in every respect, and in a seaworthy condition when she left San Francisco. In her voyage round the cape she met with several severe storms, whereby she took in considerable water, some of which penetrated between her decks. When the libellant's wool was unladen in New York, 24 bales were found to be damaged from sea water, and 76 other bales were shown to be damaged in a manner clearly distinguishable, as the witnesses testify, from mere damage by sea water. Some of these had the entire side of the bagging rotten, and the wool beneath caked and rotten; others had the entire side in a similar condition, except two or three straight strips across the side of the bale where the bagging and wool beneath would be perfectly sound, while on each side of these straight strips the bagging and wool were rotten; some had the edges of the bale in a similar condition, and some had the end affected in a similar manner. It did not appear in what part of the ship the libellants' wool was stowed, nor were the libellants aware of the damage until the wool was discharged. The master testified that wool, if in contact with wet wood, would become caked and rotten. The rotted strips in the bales of wool might, in his opinion, have been injured from the moisture or steam rising from the wet redwood between the strips of dunnage. Much of this wood, he said, was loaded when wet, a considerable portion having been previously submerged in the water. He testified, in a general way, that the cargo was well protected by dunnage, and claimed that there was no injury except such as arose from the steaming and sweating of the cargo, and the access of sea water from perils of the sea. One of the port-wardens testified to seeing one bale showing a similar strip across it unstowed from a place at a considerable distance from any redwood; another saw some bales in contact with the redwood where the dunnage was out of place. Along the wings only every other strip of dunnage was fastened, and many of these were out of place. The impress of bales of wool was also noticed stamped upon some redwood discharged, as it lay on the wharf. The witness who observed this, an inspector for one-half of the insurance companies

interested in the cargo, requested permission to examine the stowage which was not granted.

During the voyage a slight leak became evident—from some cause unknown. It was sufficient to require from five to ten minutes' spell at the pumps every four hours,—not an unusual thing, as Capt. Spencer testifies,—which did not make the ship in the least unseaworthy. After the discharge of the vessel it was found to arise from what is known as a "private leak"—a slight defect in one of the outer planks of the ship. Its position was such that no sea water could have gained access to the cargo, which was protected by the inner ceiling, and I am satisfied that this had nothing to do with the injury to the wool.

The claimants received the wool in a good condition for transportation as common carriers; they were bound to deliver it without injury, except from perils of the sea. It was clearly proved that 120 bales were seriously damaged when delivered in New York. This injury occurred while the wool was on board ship. It was not incumbent upon the libellants, therefore, in the first instance to prove the particular cause of the injury. The burden of proof is upon the claimants to show, in exoneration of their liability, that the injury arose by some peril of the sea within the exceptions of the bill of lading.

In *Clark* v. *Barnwell*, 12 How. 280, the court say: "After the damage to the goods has been established the burden lies upon the respondents to show that it was occasioned by one of the perils from which they were exempted by the bill of lading;" and if brought "within one of the accidents or dangers of navigation, it is competent to the shippers to show that it might have been avoided by the exercise of reasonable skill and attention; for then it is not deemed to be, in the sense of the law, such a loss as will exempt the carrier from liability, but rather a loss occasioned by his negligence and inattention to his duty." *The Sabioncello*, 7 Ben. 357; *The Black Hawk*, 9 Ben. 207.

As regards the 24 bales I think the evidence discloses sufficient probability of injury through sea water from perils of the sea to acquit them of responsibility for that part of the damage. *The Neptune*, 6 Blatchf. 193. As to the 76 bales, I think their defence is not made out. The peculiar nature of this injury in the caking and rotting of particular portions of the bales shows that it could not well have arisen in any other way than by direct contact with wet wood, or by

such close proximity to it through unprotected openings as would permit its steaming to produce similar damage, and the one was as much negligence as the other. The considerable number of bales rotted in strips, compared with the small number affected by sea water, shows that the wetting of the wood, whether of dunnage or of redwood, could not have arisen from the drip of sweating, nor from sea water taken in through perils of the sea. There was at no time any flooding of the between-decks, and there could be no dripping of the sea water which would not have affected the upper surface of all the bales of the upper tier much more than it could have affected any dunnage strips which might be in contact with the bales of wool. I must find, therefore, that the caking and rotting of the wool were owing to its contact with, or very near proximity to, wet and steaming redwood. Had the wet wood been entirely covered by dunnage it would seem that the wool would have been uninjured; but if, as it is alleged, spaces were needed to be left open for ventilation, this could not be done at the expense of the wool; and either the redwood should have been rejected, or, if taken on board, put where it would not injure other portions of the cargo. The contact or close proximity of the wool and the wet wood could have been easily avoided, and failure to protect the wool properly is such a want of skill and attention as constitutes negligence in stowage which renders the carrier liable. *Mainwaring* v. *The Carrie Delap*, 1 FED. REP. 874.

The evidence afforded by the impressions of wood upon the bales, and of the bales upon the redwood, cannot be overcome by mere general testimony that the dunnage was well laid. Along the wings the dunnage was proved to have been insecurely fastened, and the general testimony of the master and other witnesses, that the dunnage over the redwood in the lower between-decks was well laid, is much qualified by the fact that they saw but a small portion of it laid.

Even if the burden of proof was upon the libellants to show the particular cause of the injury, I think it is sufficiently shown. The presence of a sufficient cause is shown in the wet redwood, whether in contact with or in close proximity to the wool, either of which would render the carrier liable; while no other consistent or adequate cause of the damage to the 76 bales appears.

There must, therefore, be judgment for the libellants, with costs, and a reference to ascertain the damage to the 76 bales above referred to.