## THE MAGGIE M.

### ROBINSON and others v. THE MAGGIE M.

*(District Court, S. D. New York. April 21, 1887.)*

1. **SHIPPING—STOWAGE—DAMAGE TO GOODS—LEAKAGE—PERILS OF THE SEAS.**
   A vessel is bound not only to stow goods securely, so far as practicable, but also to separate, so far as may be, such as are liable to injure each other, through accident, in severe weather.

2. **SAME—CASE STATED—BURDEN OF PROOF.**
   Two tiers of oil barrels were stowed in the between-decks in front of and over bales of cork. The barrels got adrift in severe weather. Some were smashed, others leaked, and the bales below were injured by oil. *Held*, that the burden of proof was upon the vessel to show that the injury could not have been avoided by reasonable care, both as respects secure stowage of the barrels, and the separation of the barrels from the bales, wth reference to the liability to accident, and consequent leakage. Neither satisfactorily appearing upon the proofs, the vessel was held liable for the damage.

In Admiralty.

*Henry Brodhead*, for libelants.

*Olin, Rives & Montgomery*, for claimants.

BROWN, J. This libel was filed to recover damages for injuries to 31 bales of corks out of a shipment of 114 bales, brought from Seville to New York by the bark Maggie M., in the autumn of 1885. The bales were alleged to be damaged by oil. The proof shows that the cork bales were stowed in the lower hold, mostly around and aft of the main hatch, and extending up between the beams of the open between-decks. Immediately forward of the main hatch were stowed two rows of barrels, containing olive oil, running athwart ships. The ship experienced some very heavy weather, causing great rolling of the vessel, and the loss of some sails, and during this weather the pumps began to bring up oil from the bilges. Upon arrival, the oil barrels of the forward tier were found to have got adrift, and their contents gone, a few of them being smashed to pieces.

The weight of proof shows that most of the bales were stowed aft of the oil; but considering not only the positive testimony on the part of the libelants, as well as the statements of two of the claimants' witnesses, I think that some, at least, of the bales were stowed beneath the oil. There is nothing inconsistent, therefore, in the theories urged on both sides, namely, that the bales that came out first were uninjured, which

may have been those taken from aft of the main hatch, or those that projected between or above the beams; and the testimony of the libelant's witnesses that the oil ran down upon the bales beneath the main hatch; while still other bales may also have been injured by the rolling of the ship after so much oil was suddenly set free in the rough weather.

While the proof on the libelant's part is very indefinite as to the extent of the damage, it is impossible to doubt from the testimony that the bales were damaged to some extent by the oil that came from the broken barrels. Quite a number of the bales are described as "soaking wet" with oil, so that the oil could be squeezed out of them. That the barrels were broken during the rough weather, and in consequence of it, I have no doubt.

The only questions that remain, therefore, are—*First*, whether the barrels of oil amid-ships were stowed as securely as by reasonable care they might and should have been, having reference to the contingencies of the voyage; and, *secondly*, whether, in view of the injury likely to arise from any leakage of the oil, or any breakage of the barrels, they should not have been stowed further away from goods specially liable to be injured by it.

A careful reading of the testimony does not satisfy me on either of these points. While the gales that the vessel met were undoubtedly severe, they certainly were not unprecedented; nor, so far as I can perceive, is any justification or excuse shown for stowing the oil and the bales of cork so near together. In the stowing of goods, the possibility of heavy weather must be considered, and duly provided against; and equally also the effect upon other parts of the cargo, if oil barrels should get adrift. In excepting perils of the seas, the owners of goods do not take upon themselves the consequences of a want of reasonable prudence and care on the part of the ship. The vessel is bound to make reasonable provision against all the ordinary contingencies that experience shows to be likely to cause damage. She must stow securely, and, so far as possible, keep goods well separated that are likely to injure each other through accident in severe weather. The latter this vessel clearly did not do, and no excuse for not doing it appears. *The Sabioncello*, 7 Ben. 357. The present case is less strong for the vessel than that of the case last cited. The cases of *The Fern Holme*, 24 Fed. Rep. 502; *The Bursweall*, 13 Fed. Rep. 904; *The Chasca*, 23 Fed. Rep. 156; *The Titania*, 19 Fed. Rep. 101; and *The George Heaton*, 20 Fed. Rep. 323,— referred to by the claimants' counsel,—seem to me substantially different in the circumstances and the proof.

Not being satisfied with the sufficiency of the ship's proofs to clear her in the above respects, and the burden being upon her, I must allow a decree for the libelants, with costs.