THE HUDSON.

(District Court, S. D. New York. April 6, 1903.)

1. SHIPPING—DAMAGE TO CARGO—NEGLIGENT STOWAGE.

A ship, after loading part of a cargo of tea, took on at another port a large consignment of tanned skins, having a strong odor, which were stowed in the same hold with a portion of the tea, and during the voyage the tea became impregnated with the odor, and was thereby damaged. It became necessary during the voyage, owing to a threatened storm, to remove the ventilators from such hold, and to plug the openings for 20 hours, and the ship claimed that the damage, if any, occurred at that time, and was from a danger of navigation, within exceptions in the bills of lading and section 3 of the Harter act. *Held*, that the proximate cause of the loss was the negligent stowage, for which the ship was not exempted from liability.

In Admiralty. Suit for damage to cargo.

Owen & Sturges, for libelant.

Convers & Kirlin, for claimant.

ADAMS, District Judge. This libel was filed to recover damages to two consignments of tea, belonging to the libellant, a New York merchant, shipped on the steamship Hudson in December, 1900; one from Amoy, China, and the other from Yokohama, Japan. The steamship arrived in New York on March 20th, 1901.

The libelant claims that the teas were shipped in good order but, owing to the careless, negligent and improper manner in which they were stowed on board the steamship, they became impregnated and affected by foreign and injurious substances and odors, by reason of which they were seriously damaged and their value greatly lessened when delivered.

The claimant admits that the exterior condition of the packages of tea was good when delivered to the ship but alleges that the packing was insufficient. He admits that when the teas were opened after delivery; they were found to have a certain odor, the cause of which was unknown, but denies negligence in the stowage, alleging that it was as usual and customary, and further alleges that the damage was within the exceptions of the bills of lading, which provided that

"loss or damage from machinery, boilers or steam, or from  \*  \*  \*
heat  \*  \*  \*  on board  \*  \*  \*  error in judgment, any act,
neglect or default whatsoever of  \*  \*  \*  master or crew in the
management or navigation of the ship  \*  \*  \* · risk of craft or hulk
or transhipment and all and every the dangers and accidents of the
seas  \*  \*  \*  and of navigation of whatever nature or kind (were)
excepted"; and that "the ship is not liable for insufficient packing or
\*  \*  \*  sweat  \*  \*  \*."

The claimant further alleges that the ship was obliged during the
voyage to remove the ventilators to No. 2 hold, where some of the
libellant's Amoy tea was stowed and to plug the ventilator holes in
the decks to provide for an expected storm, which however passed
away from the ship and the ventilation was restored. It was then
found that there was an odor in the hold, which did not exist before
the ventilators were removed and did not remain after they were re-
placed. It is alleged that if there were damage to the teas, it was
due to this cause and was within the exceptions of the bill of lading
and also within the exemptions contained in the third section of the
Harter act. Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St.
1901, p. 2946].

Further defences were set up to the effect that the packages contain-
ing the tea were not air tight, as they should have been, and as the
claimant supposed they were, and that the teas were sent alongside
the ship in lighters which had carried petroleum and other goods giv-
ing off odors which impregnate their surroundings and were thus sub-
jected before shipment on the steamer to the risk of taint and injury
for which the steamer would not be liable, under the exceptions and
the act.

The claim for damage to the teas shipped at Yokohama is not
pressed by the libellant and the questions to be determined relate to
the Amoy shipment.

There is nothing to show any taint or injury from the method in
which the teas were sent alongside the ship. The evidence shows that
they were packed in the usual manner and delivered to the ship in
good order.

The evidence also shows that after the shipment of the teas at
Amoy, a considerable portion of which were stowed in lower No. 2
hold, the ship took on board at Aden, on the 5th of February, some
300 bales of tanned skins, a large portion of which were preserved with
naphthaline which emitted a pungent odor. The skins were dry but
with a distinctive smell. They were stowed in No. 2 hold between
decks about 70 feet from the libelant's teas. There was a hatch com-
munication from between decks to the lower hold. The hatch covers
were partially laid on but afforded no protection to the teas in the
lower hold against odors from between decks.

The ventilators had never been removed or hatches of the ship
closed after sailing from Aden until after she had passed through the
Suez Canal. On the 16th of February, about noon, when in the
Mediterranean, the barometer fell fast and there was a threatening
appearance of bad weather, attended with heavy seas which flooded the
deck. To meet the existing and anticipated conditions, the ventilators

122 F.—7

were removed, the holes plugged up and the hatches battened down fore and aft.. The following morning, however, the weather improved so much that about 8 a. m. the former conditions were restored. An examination of the hold under the square of No. 2 hatch, was then made, showing that the effect of depriving the cargo of all ventilation in No. 2 hold had been to cause it to sweat, and there was a sickening heavy odor there, different from any odor in the other holds. Ventilation removed this to a certain extent, nevertheless when the ship discharged in New York, a large quantity of the libellant's tea in that hold was found to contain a damaging odor, which was attributed by several witnesses to the skins. The odor of the skins was greater than usual after the hold was opened, and it was noticeable when they were discharged that some additional smell was still on them. This smell as well as could be described, was a mixture of the natural smell of the skins and of the naphthaline used to preserve them.

In January, subsequent to the loading of the Amoy teas, the ship still had some cargo space and cables were exchanged between her agents in Aden and in London with reference to filling the space. On the 19th the steamer was instructed that such cargo must not be prejudicial to teas. On the 21st, the Aden agents cabled that they could get 350 bales of dried skins and 400 bags of coffee and asked if they should be accepted. The reply was that they might but the skins must be stowed apart from the coffee. Nevertheless, they were stowed in the same hold with the tea and coffee although the danger was recognized and it appears that tea is more susceptible to odor damage than coffee.

No. 2 hold of the steamer was next to the engine and boiler space, the heat from which penetrated to the hold. The exposure of the teas to the odor of the skins, aggravated by this heat without ventilation for about twenty hours, was the probable cause of the damage.

I must conclude that the method of stowage was bad. The evidence shows that shipments have been made of skins in the same hold with teas without injury but still the risk was the ship's and even if the closing of the hold on account of storm, or anticipated storm, resulted in the damage, the ship can find no exoneration in such fact, because the negligent stowage was the proximate cause of the loss. The Pharos (D. C.) 9 Fed. 912; The T. A. Goddard (D. C.) 12 Fed. 194; The Venner (D. C.) 27 Fed. 523; The Glamorganshire (D. C.) 50 Fed. 840; The Warren Adams, 20 C. C. A. 486, 74 Fed. 413; Knott v. Botany Mills, 179 U. S. 69, 21 Sup. Ct. 30, 45 L. Ed. 90.

Decree for libellant, with an order of reference.